1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EDWIN DURAND, et al.,

11              Plaintiffs,              No. CIV S-09-2038 JAM KJM PS

12        vs.

13   CANDICE STEPHENSON, et al.,         ORDER AND

14              Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16              This matter is before the court on defendants' motion to dismiss and/or for

17   summary judgment and on an order to show cause under Federal Rule of Civil Procedure

18   11(c)(3).  Upon review of the documents in support and opposition, review of plaintiffs' response

19   to the order to show cause and defendants' reply thereto, review of unredacted documents

20   submitted for in camera review, upon hearing the arguments of plaintiffs and counsel at the

21   hearing on the motion to dismiss, and good cause appearing therefor, THE COURT FINDS AS

22   FOLLOWS:

23              In this action predicated on diversity jurisdiction, plaintiffs allege that an

24   articulated Wabco wheel loader, Model 1200, owned by plaintiffs was being stored on Marjorie

25   Strauch's property, with her permission.  Plaintiffs further allege that after Strauch passed away,

26   her heirs, defendants Candice Stephenson and Wayne Strauch, sold the loader without

                                        1

1   permission of, or notice to, plaintiffs.  This action for conversion ensued.  Defendants move to

2   dismiss for lack of jurisdiction and/or for summary judgment.

3   I.  Motion to Dismiss

4         A.  Jurisdictional Allegations and Analysis

5             A federal court has jurisdiction over the underlying dispute if the suit is between

6   citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest

7   and costs.  28 U.S.C. § 1332(a).  The amount in controversy is determined from the face of the

8   pleadings.  Crum v. Circus Circus Enterprises, 231 F.3d 1129, 1131 (9th Cir. 2000).  The

9   jurisdictional amount is satisfied where plaintiff makes a good faith claim in excess of the

10  requisite amount.  Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir.

11  1997).  To justify dismissal, "[i]t must appear to a legal certainty that the claim is really for less

12  than the jurisdictional amount."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289

13  (1938).

14            The complaint alleges that "[i]n 2006 the Loader was appraised at $600,000."

15  Complaint ¶ 12.  This action was filed July 23, 2009.  Defendants contend diversity jurisdiction

16  is lacking because the value of the subject loader was less than $75,000.  Two machines were

17  stored on defendant Wayne Strauch's property:  a loader, the machine at issue in the instant

18  action, and a bulldozer, Allis-Chalmers Model HD-41.  Plaintiffs have provided two

19  unauthenticated bills of sales pertaining to these machines.  One bill of sale indicates Francis

20  Brown sold both machines to an Erik Andersen in 1996 for the sum of $15,000.  Peterson Decl.,

21  Ex. 5.  The second bill of sale dated 1999 states both machines were sold to plaintiffs by

22  Andersen.  Id.  In 2008, plaintiff Edwin Durand sold the bulldozer for the sum of $12,000.

23  Peterson Decl., Ex. 1 (Madelaine Durand Depo. at 84:23-24) & Ex. 6.  In light of the sum both

24  machines sold for in 1996, a serious question has been raised regarding whether the amount in

25  controversy was pled in good faith.

26  /////

B. <u>Noble Murray Appraisal</u>

In their initial Rule 26 disclosures to defendants, plaintiffs provided a copy of an appraisal dated February 2006. Peterson Decl., Ex. 4. The appraisal was allegedly performed by a person named Noble Murray, of Hobson, Montana, who estimated a cash value for the Wabco 1200 Wheel Loader in the amount of $600,000. <u>Id.</u> At oral argument, plaintiffs represented that this appraisal was the basis for plaintiffs' good faith belief that the amount in controversy was met for diversity jurisdiction. The authenticity of the Murray appraisal has been cast into serious doubt, however, because defendants have submitted a certified death certificate indicating Noble Murray died on December 23, 2003, over two years prior to the date he allegedly authored the appraisal. Peterson Decl., Ex. 7. Plaintiffs do not dispute the authenticity of the death certificate nor do they contest that the death certificate pertains to the alleged author of the appraisal. Defs.' Statement of Undisputed Facts, No. 19; <u>cf.</u> Pls.' Authentication of Noble Murray's Appraisal (Docket No. 37) at 2 ("final draft" of appraisal done in 2001).

Plaintiffs contend the 2006 date of the appraisal is simply a typographical error, and that Murray created the appraisal document in 2001. By order filed July 15, 2010, plaintiffs were directed to file competent evidence establishing the authenticity of the Noble Murray appraisal dated February 2006 and to show cause why their conduct has not violated Federal Rule of Civil Procedure 11(b). Plaintiffs also were cautioned that in the absence of proper authentication, the court would consider the imposition of sanctions under Federal Rule of Civil Procedure 11(c)(4). The response filed by plaintiffs to the order to show cause fails to establish the authenticity of the Noble Murray appraisal. <u>See</u> Docket Nos. 37, 40.

Plaintiffs fail to adequately explain the internal inconsistencies evident in the appraisal document, which demonstrate the unlikelihood the appraisal was performed in 2001, as plaintiffs claim. Besides the February 2006 date listed at the top of the first page of the appraisal, the document references an internet search in January 2006 of recently listed sales, a machine comparable to the loader located in Wisconsin in May 2005, and thirty industrial implements

3

1  listed for sale on January 20, 2006.  Peterson Decl., Ex. 4 at 1, 3.  The document discusses a

2  bulldozer with 3,424 total operating hours, identifying such usage as 1.5 years of run time for 85

3  weeks at 40 hours per week, which is indicative of the normal expected operational run time for

4  this kind of equipment.  Id., Ex. 4 at 2, 3.  Yet if the document had been created in 2001, two of

5  the comparison dozers listed in the appraisal would have to have been operated consistently, over

6  a several year period, for an extraordinary number of hours per week, every week of the year.[1]

7  Id., Ex. 4 at 1.  If the document was created in 2006, as is suggested by the repeated references to

8  the years 2006 and 2005 within the document, these machines would yield operational hours

9  more in line with what the appraisal itself indicates is a normal expected operational run time.[2]

10         Plaintiffs now submit in response to the order to show cause several documents

11  they claim to have possessed all along, and which allegedly support the authenticity of the

12  Murray appraisal.  With the documents they have submitted a declaration explaining that once

13  the court issued the order to show cause they then went page by page through voluminous

14  records.  Pls.' Decl. (Docket No. 40) at 2:17-23.  But the documents now provided, more than a

15  year after this case was filed, were never identified by plaintiffs in their initial disclosures, never

16  produced in response to discovery propounded by defendants, and never revealed or discussed at

17  deposition, making the newly-disclosed allegedly supporting documents inherently suspect.

18  Moreover, plaintiffs have submitted no declarations to support a reasonable finding that the

19  Murray appraisal is authentic.  The unredacted version of a purported March 2001 letter from

20  Murray to plaintiffs, plaintiffs' Exhibit 7, does not enclose an appraisal pertaining to the subject

21

22  [1]  Item 2 lists a Cat-Dozer, model year 1992 with 29,204 running hours.  29,204 hours
divided by 9 years (1992 to January 2001) yields 3,245 hours per year.  Divided by 52 weeks, this

23  bull-dozer would have to have been operated non-stop 62.4 hours per week.  Item 3 lists a Cat-
Dozer, model year 1996 with 22,209 running hours.  22, 209 hours divided by 5 years (1996 to

24  January 2001) yields 4441 hours per year, or 85 hours a week, assuming the machine was
operated every week of the year.

25  [2]  For item 2, 29,204 hours divided by 14 years (1992 to January 2006) yields 2,086 hours
per year or 40.11 hours per week.  For Item 3, 22,209 hours divided by 10 years (1996 to January

26  2006) yields 2,221 hours per year or 42.7 hours a week.

1   loader, and the signature on the letter is not consistent with the exemplars provided in plaintiffs'

2   Exhibit 8.  After reviewing the entirety of the record, the court finds the evidence is insufficient

3   to establish that the Murray appraisal was authored by Noble Murray in 2001.

4                     C. Appropriate Sanction

5           The court must conclude that plaintiffs' allegation, that the amount in controversy

6   is met because the Wabco loader was appraised at $600,000, was made in bad faith in light of the

7   fraudulent nature of the underlying document.  As noted, however, this action cannot be

8   dismissed unless it appears to a legal certainty that plaintiffs' claim for conversion is less than the

9   jurisdictional amount.  St. Paul Mercury Indem. Co., 303 U.S. at 289; see also Crum, 231 F.3d at

10   1131.  In opposition to defendants' motion, plaintiffs submit a declaration of Timothy Fadda

11   dated June 1, 2010 and a letter from Mr. Fadda dated October 30, 2007, wherein he states the

12   value of the subject loader in operable condition would be $150,000 to $250,000, with repair

13   costs less than $25,000.[3]  Pls.' Ex. 10.  Because this appraisal was made close in  time to the

14   filing of the complaint, it is not a legal certainty that plaintiff's claim for conversion is less than

15   $75,000.  The motion to dismiss for lack of subject matter jurisdiction should therefore be

16   denied.

17           Although defendants cannot prevail on the motion to dismiss, the court must turn

18   to the question of an appropriate sanction for plaintiffs' litigation tactics.  The court finds

19   plaintiffs have violated Federal Rule of Civil Procedure 11(b) by presenting the Murray

20   appraisal, a fraudulent document, to the court.  At the status conference on December 16, 2009,

21   defendants raised the issue of whether the threshold for federal jurisdiction was met.  Despite

22   knowing the jurisdictional matter was at issue, plaintiffs failed to disclose in their initial

23

24        [3]  Defendants move to strike the Fadda declaration and letter.  Timothy Fadda is
plaintiffs' retained expert.  In opposition to the motion to strike, plaintiffs contend that
defendants did not disclose their expert, Rick Churches, until briefing on the motion for summary

25   judgment.  Plaintiffs' argument is irrelevant to the pending issues before the court.  Under the
scheduling order, expert disclosures were not due until ninety days before trial.  In any event,

26   plaintiffs' disclosure is timely and the Fadda declaration and letter will not be stricken.

1  disclosures or in responses to interrogatories any appraisals of the subject loader other than the

2  fraudulent Murray appraisal.  Peterson Reply Decl., Exs. A, B.  Plaintiffs disclosed the Fadda

3  Declaration and October 30, 2007 letter from Fadda only in opposition to the motion to dismiss.

4  Plaintiffs' bad faith actions resulted in defendants' needlessly incurring attorneys' fees and costs

5  in connection with preparing and filing the motion in the first place.  Plaintiffs' pro se status does

6  not insulate them from sanctions where sanctions are warranted.  See Cook v. Peter Kiewit Sons

7  Co., 775 F.2d 1030, 1037 n.13 (9th Cir. 1985).

8             Under Federal Rule of Civil Procedure 11(c)(4), the court finds a sanction

9  requiring plaintiffs to pay an amount tied to the reasonable attorneys' fees and costs incurred by

10 defendants in moving to dismiss for lack of jurisdiction will be sufficient to deter repetition of

11 the conduct or comparable conduct by others similarly situated.  Cf. Cooter & Gell v. Hartmarx

12 Corp., 496 U.S. 384, 406-07 (1990) (Rule 11 permits award only of those expenses directly

13 caused by sanctionable filing); see also Advisory Committee Notes, 1993 Amendments ("court

14 has significant discretion in determining what sanctions, if any, should be imposed for a

15 violation, subject to the principle that the sanctions should not be more severe than reasonably

16 necessary to deter repetition of the conduct by the offending person or comparable conduct by

17 similarly situated persons").  As the sanction is being imposed on the court's own initiative, and

18 not based on a Rule 11 motion brought by defendants, the sanction will be payable to the court.

19 See Fed. R. Civ. P. 11(c)(4) & Advisory Committee Notes, 1993 Amendments.  Defense counsel

20 will be directed to submit an itemized billing to the court for review and plaintiffs will be given

21 an opportunity to respond.  Both parties may provide the court with limited briefing on their

22 positions regarding the ultimate amount of sanctions that satisfy the standard of "not . . . more

23 severe than reasonably necessary to deter repetition of the conduct" in this case.

24 /////

25 /////

26 /////

6

III.  <u>Motion for Summary Judgment</u>

In the alternative, defendants move for summary judgment.  Summary judgment is appropriate when it is demonstrated there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

1    Defendants contend plaintiffs cannot meet their prima facie case for conversion.

2  "The elements of a conversion cause of action are (1) plaintiffs' ownership or right to possession

3  of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or

4  disposition of plaintiffs' property rights; and (3) damages." Baldwin v. Marina City Properties,

5  Inc., 79 Cal.App.3d 393, 410 (1978).  While legal title to property can establish ownership, it is

6  not a requisite to maintain an action for damages in conversion.  In the absence of proof of

7  ownership, plaintiffs must show at a minimum that they were entitled to immediate possession at

8  the time of conversion.  See Bastanchury v. Times-Mirror Co., 68 Cal.App.2d 217, 236 (1945).

9  Thus, to establish a cause of action for conversion, plaintiffs must adduce evidence from which a

10  jury could find they are the rightful owners of the allegedly converted property or that they had

11  the right to possess the property.

12    Although plaintiffs have disclosed unauthenticated copies of bills of sale from

13  1996 and 1999 pertaining to the loader, plaintiffs' evidence is fatally deficient because there is no

14  bill of sale or other evidence establishing Marjorie Strauch sold the loader to Francis Brown or

15  any other alleged buyer of the subject loader in the chain of title.  Plaintiffs' evidence has a

16  lacuna of proof with respect to their right to possess the subject loader.  Plaintiffs contend that

17  because defendants assert abandonment as an affirmative defense, their chain of title is complete.

18  Plaintiffs further contend that because defendant Wayne Strauch did not timely respond to a

19  request for admission, it is deemed admitted that defendant Strauch knew his mother sold the

20  loader.[4]  This deemed admission, however, is not binding on defendant Candice Stephenson and

21  the admission does not fill the gap regarding to whom Marjorie Strauch sold the loader.  Pls.' Ex.

22  12.  Neither abandonment nor defendant's deemed admission is a sufficient evidentiary basis to

23  raise a triable issue regarding a completed chain of title or plaintiffs' right of possession.  There

24

25    [4]  Plaintiffs also submit the declaration of Richard Van Tassel who bought the loader from defendant Strauch.  Pls.' Ex. 9.  Defendants object to this declaration because Van Tassel was never disclosed by plaintiffs as a potential witness either in initial disclosures or in response

26  to interrogatories.  This objection is well taken and the Van Tassel declaration will be stricken.

is a complete evidentiary vacuum between Marjorie Strauch's undisputed ownership of the loader and the unauthenticated 1996 bill of sale from Brown to Andersen.  Because plaintiffs' evidence fails on an essential element for a claim of conversion, defendants are entitled to summary judgment.

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants' motion to strike the declaration of Timothy Fadda and the October 30, 2007 letter from Mr. Fadda is denied.

2.  Defendants' motion to strike the Van Tassel declaration is granted.

3.  Within seven days from the date of this order defense counsel shall submit an itemized account of attorneys' fees and costs incurred in connection with the motion to dismiss for lack of subject matter jurisdiction.  Defense counsel may also file a brief limited to two pages stating the defense position regarding the amount of sanctions that will satisfy the standard of "not . . . more severe than reasonably necessary to deter repetition of the conduct" in this case. Within seven days of the defense filing, plaintiffs may file a brief limited to two pages stating their position regarding the amount of sanctions that will satisfy the same standard.

4.  The issue of Rule 11 sanctions against plaintiffs will thereafter stand submitted.

IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion to dismiss for lack of subject matter jurisdiction be denied;

2.  Defendants' alternative motion for summary judgment be granted; and

3.  This action be closed.

DATED:  September 28, 2010.

_____
U.S. MAGISTRATE JUDGE

006
durand.57